In the Matter of OREN ROOT, JR., on Behalf of EFRAIN TANTAO, et al., Petitioners, v WILLIAM KAPELMAN, as Assistant Administrative Judge of the Supreme Court, Bronx County, et al., Respondents.

First Department, April 3, 1979

### APPEARANCES OF COUNSEL

*Leon B. Polsky* and *Oren Root, Jr. (Richard Greco* with them on the brief), petitioners *pro se.*

*Gerry E. Feinberg* of counsel *(Robert Abrams, Attorney-General),* for William Kapelman, respondent.

*Allan D. Marrus* of counsel *(Steven R. Kartagener* with him on the brief; *Mario Merola, District Attorney, pro se),* for Mario Merola, respondent.

### OPINION OF THE COURT

SULLIVAN, J.

In this article 78 proceeding petitioners seek, *inter alia,* to prohibit the sentencing *in absentia* of Efrain Tantao, a defen-

dant in a pending criminal proceeding, who apparently absconded almost five years ago, and alternatively, to prohibit the sentencing court from ordering any attorney from the Legal Aid Society to represent Tantao at such sentencing proceeding.

On February 27, 1974, Tantao, represented by an attorney of the Legal Aid Society, entered a plea of guilty in Supreme Court, Bronx County, to criminal sale of a controlled substance in the third degree, a class A-III felony, in full satisfaction of an indictment charging criminal possession of a controlled substance in the first degree and related offenses, as well as two other outstanding indictments.

The plea bargain placed on the record provided that Tantao would be admitted to bail pending sentence in anticipation of his co-operation with the prosecution in its investigations. If he supplied information which was helpful, the District Attorney would recommend a sentence of lifetime probation. If he failed to co-operate, but did not flee, the sentence was to be one year to life. Should the sentencing court, after a review of the probation report, find itself unable to keep its commitment as to either lifetime probation or the alternative sentence of one year to life, Tantao was to be allowed to withdraw his plea. In the event, however, that Tantao were to abscond the sentence could be as much as eight and one-third years to life. The case was adjourned until April 15, 1974 and Tantao was released on bail pending sentence. When he failed to appear on April 15, a bench warrant was issued.

In late 1978 or early January of 1979, it was ascertained that there were approximately 170 cases in the Supreme Court, Bronx County, involving defendants who had been convicted but never sentenced due to their unavailability. These cases had apparently been removed from their respective calendars as bench warrants were issued. The Administrative Judge in Bronx County ordered restoration of these cases to the calendar for sentencing.

On the date set for his sentence, January 12, 1979, Tantao, not surprisingly, failed to appear. An attorney for the Legal Aid Society was present, as directed, and at his request the minutes of the plea proceeding were ordered unsealed and a transcript made available. The sentence was then adjourned and this proceeding, in the nature of prohibition, followed. It was brought by a Legal Aid Society attorney on behalf of Tantao, and by Leon Polsky, the attorney-in-charge of the

Criminal Defense Division of the Legal Aid Society, individually, as successor to Tantao's original attorney in the criminal proceeding, against the Administrative Judge, the Judge before whom Tantao is to be sentenced, and the District Attorney of Bronx County.

In addition to challenging the court's power to sentence Tantao *in absentia,* petitioners claim that it has lost jurisdiction to impose sentence because of the unreasonable delay of approximately five years since Tantao's default in appearing and the issuance of the bench warrant. Petitioners argue that if Tantao waived his right to be present, he did so five years ago and that the sentencing court cannot now justify the long delay of almost five years in pronouncing sentence. They also stress that the attempts to locate Tantao were minimal, consisting of two futile efforts by a warrant squad officer to locate him at his last known address.

Petitioner Polsky challenges the court's power to order any of its attorneys to represent a client in his absence, particularly a client whom none of the society's lawyers has ever met. In this connection, it is pointed out that the Legal Aid attorney who represented Tantao is no longer with the society (he is currently an Assistant District Attorney in Bronx County), and that his sole contact with Tantao was a two-hour interview prior to the entry of Tantao's plea of guilty.

Whatever their differences, all parties to this controversy are in agreement that this court should establish guidelines for the disposition of cases of this nature.

■ An article 78 proceeding in the nature of prohibition is an extraordinary remedy, to which resort in a criminal matter should be had only when absolutely necessary. *(Matter of Steingut v Gold,* 42 NY2d 311, 315; *La Rocca v Lane,* 37 NY2d 575, 578-580; *Matter of State of New York v King,* 36 NY2d 59, 62; *Matter of Nigrone v Murtagh,* 36 NY2d 421.)

" '[It] lies only where there is a clear legal right, and * * * only when a court * * * acts or threatens to act without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction' [citations omitted]. The writ does not lie as a means of seeking a collateral review of an error of law, no matter how egregious that error might be, in a pending criminal proceeding, but only where the very jurisdiction and power of the court are in issue *(Matter of*

*State of New York v King, supra,* at p 62, and cases cited therein)." *(Matter of Steingut v Gold, supra,* p 315.)

Even an error of law of constitutional dimension is not ordinarily reviewable by an article 78 proceeding. *(La Rocca v Lane, supra,* p 580; see, e.g., *Matter of Scranton v Supreme Ct. of State of N. Y.,* 36 NY2d 704 [article 78 proceeding inappropriate to review claim of deprivation of speedy trial].) It has been held, however, that an article 78 proceeding is the traditional remedy for raising double jeopardy arguments, because the trial court may lack the jurisdiction to conduct a second trial. *(Matter of Scranton v Supreme Ct. of State of N. Y., supra.)*

These limitations on the use of article 78 apply even when the claimed error of law would not be immediately, or perhaps ever, reviewable on appeal. *(Matter of State of New York v King, supra,* pp 62-63.) The belief is that if the strictures on the availability of the writ of prohibition were relaxed, the doors would be open to "innumerable proceedings in all sorts of criminal matters to review allegedly prejudicial errors of law for which there would be no eventual appellate review or only appellate review after final judgments, and then only of conviction" and that "[s]uch a system is neither civilized nor even rational." *(Matter of State of New York v King, supra,* pp 63-64.)

In our opinion, petitioners fail to make the requisite preliminary showing that they have a clear legal right to a prohibition of Tantao's sentence *in absentia.* It seems clear to us that the law of this State sanctions the right of the court to sentence a defendant who has absconded, whether he does so during trial or after a plea of guilty.

It is now beyond dispute that the right of a defendant to be present at trial "is clearly waivable under both the Federal and State Constitutions" *(People v Epps,* 37 NY2d 343, 349), either by voluntary abstention *(Diaz v United States,* 223 US 442, 455), or by consent or misconduct *(Illinois v Allen,* 397 US 337, 342-343; see *Snyder v Massachusetts,* 291 US 97, 106). Although the early cases adhered to the common-law view that the right was absolute and nonwaivable *(Stephens v People,* 19 NY 549; *Maurer v People,* 43 NY 1), New York has for some time recognized that a defendant in a criminal trial may waive his right to be present. (See *People v Epps, supra; People ex rel. Lupo v Fay,* 13 NY2d 253, cert den 376 US 958; *People ex rel. McBride v Fay,* 19 AD2d 712, affd 14 NY2d 843,

cert den 380 US 982; *People v La Barbera,* 274 NY 339.) In *People v Brock* (48 AD2d 790) this court had occasion to reaffirm the principle that a defendant who absconds waives his right to be present at trial and at sentence. (See, also, *People v Colon,* 66 Misc 2d 956; *People v Cordero,* decided Dec. 11, 1978.)

There is a specific statutory provision in this State that a defendant on a conviction for a felony "must be personally present at the time sentence is pronounced." (CPL 380.40, subd 1.) The Court of Appeals, however, has held that the provisions of this statute may be waived. *(People v Stroman,* 36 NY2d 939, 940.)

Petitioners suggest that while the law may be settled to permit the sentencing of an absent defendant who absconds during trial, it will not countenance the sentence of the absent defendant who absconds after entering a plea of guilty. Neither logic nor law justifies such a distinction. Unless waived, a defendant has a right, guaranteed by Constitution (US Const, 6th, 14th Amdts; NY Const, art I, § 6) and statute (CPL 260.20), to be present at each and every stage of the criminal proceeding. *(People v Byrnes,* 33 NY2d 343, 349.) That right may be waived during trial or following a plea of guilty. Nor is due process violated by the sentencing of a defendant who has absconded. (See *Byrd v Hopper,* 537 F2d 1303, 1305.)

Of course, while it is now axiomatic that a defendant may waive his right to be present, there must be a finding of waiver before he is sentenced *in absentia.* Thus, if, as expected, Tantao fails to appear on the day set for sentencing, it will be the People's burden to show a waiver. In this case the test is whether the defendant has voluntarily absented himself from the proceedings. *(Diaz v United States, supra,* p 453.) Of course, the mere fact of absence may lend itself to the inference of waiver. Whether a hearing is necessary in such cases, and, if it is, the nature and quality of proof which would be required, will vary from case to case, and are matters best left to the discretion of the sentencing court.

Petitioners also argue that the court has lost jurisdiction to sentence because of the unreasonable five-year delay in pronouncing sentence. CPL 380.30 provides that "[s]entence must be pronounced without unreasonable delay." And, while it is the decisional law of this State that "a long and unnecessary failure to sentence is not only error but results in lack of jurisdiction" *(People ex rel. Harty v Fay,* 10 NY2d 374, 379),

not all of the usual salutary reasons requiring the prompt and expeditious termination of a criminal proceeding are present in the case of an absconding defendant. The "orderly administration of the courts and the public interest therein demand prompt disposition" of criminal matters. *(People ex rel. Harty v Fay, supra,* p 379.)* Of course, these are interests which are served by a prompt sentence, whether the defendant is sentenced in person or *in absentia.* It may well be that the delay in sentencing is the result of prosecution efforts to locate the defendant. Although it does not appear to be, that may even be the case here.

What distinguishes the delayed sentence in the case of the absconding defendant from *Fay (supra)* and the policy considerations underlying it, is that no claim can be made—as may be made in the case of a nonabsconding defendant—that a delayed sentence prejudices the defendant. His eventual return to society upon completion of sentence, or eligibility for parole or pardon or commutation of sentence is not unnecessarily deferred since he is unavailable in any event. Furthermore, an appeal does not lie until there is a judgment. In the case of a deferred sentence, the appellate process may be impeded or even frustrated. This is not a consideration in the case of an absconding defendant. He has no right to appellate review of his conviction, inasmuch as he would not be available to obey the mandate of the court in the event of an affirmance. *(People v Parmaklidis,* 38 NY2d 1005; *People v Sullivan,* 28 NY2d 900; *People v Del Rio,* 14 NY2d 165.)* In fact, the nonavailability of the appellate process after sentence is one of the reasons which petitioners have cited as to why the extraordinary remedy of prohibition should lie herein.

■ As already noted, petitioner Polsky seeks prohibition of any order which would compel him or any attorney on the Legal Aid staff to represent Tantao *in absentia* at sentence. It is argued that since no representative of Legal Aid has met or communicated with Tantao subsequent to the entry of his plea, the society's representation of his interests will likely be ineffective. There will not be, for instance, any opportunity to consult with Tantao as to any mitigating circumstances concerning his involvement in the crime to which he pleaded guilty or to ascertain whether he provided the prosecution with any useful information prior to his departure.

A defendant has a fundamental Sixth Amendment constitu-

tional right to the effective assistance of counsel at the time of sentencing, which cannot be waived by his absence alone. *(People v Aiken,* 45 NY2d 394, 397-398.) However, even though defense counsel may be deprived of the opportunity to consult with his client, he can still render effective assistance. Thus, the inability of counsel to consult with the defendant should not, per se, result in a finding of denial of effective assistance of counsel.

In such cases, especially where there has been a significant lapse of time between plea and sentence, a transcript of the plea minutes would seem to be an indispensable asset and should be made available, if requested, so that the terms of the plea bargain are fully understood.

There may be other problems. The original attorney may no longer be available, in which event new counsel will have to be appointed. However, the original attorney, if available, is best equipped to represent the absent defendant and applications to be relieved should be granted only for legal cause.

Finally, we should note that, petitioners' assertion to the contrary, the decision to restore these cases to the calendar was judicially motivated. Aside from the obvious benefit of removing these seemingly moribund cases from the judicial backlog, justice is served by this decision in another less conspicuous way. Experience teaches us that the most effective mechanism which returns an absconding defendant to the judicial system is his rearrest. Upon his subsequent conviction of a felony, committed after the conviction upon which he has never been sentenced, and the consequences of which he has managed to avoid, the earlier conviction does not qualify either under the second or persistent felony statutes as a felony conviction because sentence was not imposed prior to the commission of the new crime. (Penal Law, §§ 70.04, 70.06, 70.08, 70.10.) On the other hand, the nonabsconding defendant, who was sentenced and thereby paid his debt to society, is, by virtue of that prior sentence,* at least a second felony offender on any subsequent felony conviction. This is inequitable and the sentence *in absentia* of a defendant who has absconded would eliminate this invidious distinction.

Accordingly, the application for an order in the nature of prohibition, pursuant to CPLR article 78 should be denied and

---

* This assumes that said sentence was not imposed more than 10 years before commission of the felony of which he presently stands convicted, less jail time, and that no other statutory exception applies. (See Penal Law, § 70.06.)

the cross motion to dismiss the petition granted, without costs or disbursements.

MURPHY, P. J., KUPFERMAN, LANE and LUPIANO, JJ., concur.

Application for an order in the nature of a writ of prohibition unanimously denied and the cross motion to dismiss the petition granted, without costs and without disbursements.